[Civ. No. 4176.    First Appellate District, Division One.—November 24, 1922.]

FREDERICK M. GANZ, Respondent, v. J. D. and A. B. SPRECKELS SECURITIES COMPANY (a Corporation), Appellant.

[1] BROKER'S COMMISSIONS—SALE OF SUGAR—RATE OF COMMISSION—EVIDENCE—VERDICT.—In this action to recover a broker's commission alleged to have been earned by plaintiff in the consummation of a sale of raw sugar, the evidence was insufficient to sustain the verdict of the jury as to the rate of commission agreed to be paid to the plaintiff—the evidence having shown that the defendant was not a seller, but a buyer, of raw sugar, that its general manager made the sale as an accommodation to the buyer presented by plaintiff, that said general manager stated that the defendant would not pay plaintiff any commission and refused to sign a contract for the sale of the sugar containing a brokerage clause, but that during the negotiations he did state that the defendant would pay the commission it had been in the custom of paying to its regular brokers, which was much less than that demanded by plaintiff.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George H. Cabaniss, Judge. Reversed.

The facts are stated in the opinion of the court.

Morrison, Dunne & Brobeck, Edward Hohfeld and H. A. Judy for Appellant.

Grover O'Connor and Goodfellow, Eells, Moore & Orrick for Respondent.

THE COURT.—This is an action to recover from the defendant a commission, alleged to have been earned by plaintiff in the consummation of a sale of sugar by the defendant to one C. F. Buelow.

The plaintiff is a broker and was engaged at the time of the transaction out of which this suit arose in consummating sales of beans, walnuts and peanuts, and who, during 1920, at which time sugar was a valuable and scarce commodity, also engaged in the sugar brokerage business.    The defend-

ant was engaged in the business of refining sugar and selling the same in its refined state through a firm in San Francisco, paying therefor on all such sales a commission of two cents per hundred pounds, which fact, it is alleged by the defendant, plaintiff well knew.

Early in 1920 the plaintiff called on W. H. Hannam, general manager of the defendant company, and introduced as his agent in charge of his sugar department one L. W. Goeppert. Plaintiff at that time sought to buy from the defendant some raw sugar. This was refused upon the ground, as stated by Hannam, that the defendant, Western Sugar Refinery, was a buyer, not a seller, of raw sugar. On June 21, 1920, subsequent to the visit aforementioned, Goeppert again called on Hannam, bringing with him one C. F. Buelow. It was represented to Hannam that Buelow was very anxious to buy 430 tons of raw ''Java'' sugar. The sugar was wanted in certain peculiar lots and tonnages and had to be delivered by a specific date, which was close at hand, thus accounting for the anxiety felt by Buelow and Goeppert. Hannam again advised them that the firm did not sell raw sugar but that he would, as a matter of accommodation, endeavor to match up the lots. This was done and upon the occasion of the next call of Buelow and Goeppert the former brought with him a draft of contract for the sale of the sugar in question. The record is silent as to whether or not said contract contained any provision relating to a commission, but it appears that Hannam was not satisfied with the contract and changed certain portions thereof. Rabjohn, the assistant sales manager of the defendant company, was also present at the time of signing the contract, and when said contract was entirely written to be submitted to the parties for signature, Goeppert inquired of Rabjohn: ''Where do I come in?'' Rabjohn replied that Goeppert being a stranger to him he knew nothing of it and suggested taking the matter up with Hannam. This was done, the result being that Hannam in no uncertain terms stated that no commission would be paid, that the Western Sugar Refinery Company was making the deal as an accommodation, had not solicited the business and was not going through with the deal under those circumstances. This was evidently the first intimation Hannam had that Goeppert sought a commission. The hap-

penings at this time constitute the main bone of contention. Goeppert was, in his own words, "in a box and the sugar was necessary and needed by Buelow," so that when Hannam stated what "We won't pay a commission of one per cent—we won't pay a commission of any kind," and then upon second thought said: "We are in business here in San Francisco. We make it a point to try to get along with our customers without any friction and without any misunderstanding. I thought there was nothing in this except the matter of accommodation to you, but inasmuch as we pay brokerage in San Francisco, two cents on 100 pounds, which is the amount we pay month in and month out . . . we will pay you the same commission," Goeppert was nonplussed and replied: "I don't know what Mr. Ganz will think of that." Hannam replied that he did not care what Ganz thought, and said: "You will either accept right now or I will tear the contract up and kiss the sale goodbye." There is a conflict as to the remaining portion of this conversation, Hannam and Rabjohn insisting that Goeppert accepted the two cents per hundred, and Goeppert, in turn, stating that he insisted he could not accept any reduction. Buelow's testimony was taken by deposition and his version was that nothing further was said after Hannam repeated his statement that he would not pay one per cent. Hannam's testimony indicated that after announcing his stand he said, "Shall I sign?" intimating that he desired an answer to his proposal and Goeppert said: "Sign." This is also testified to by Goeppert.

With the issues thus framed the cause was submitted to the jury, which returned a verdict in favor of plaintiff for $1,913.50. Judgment was accordingly given for that amount, from which judgment defendant prosecutes this appeal.

[1] Defendant's chief contention is that the evidence is insufficient to justify or support the verdict of the jury.

Except for the variance in the testimony of the witnesses on the question as to whether or not Goeppert accepted or refused the terms as laid down by Hannam the evidence is in substantial agreement. It is agreed that Buelow was brought to Hannam unsolicited and that Goeppert and Buelow were told at that time that the Western Sugar Refinery was a buyer, not a seller, of raw sugar. However,

Hannam testified that they seemed to be very anxious to get the sugar and he agreed to sell. Nothing further appears with reference to a commission until the contract was ready for signature, at which time the commission feature was interjected into it. Goeppert himself testified that a brokerage clause was "usually" in the contract and undoubtedly, standing on custom as he does, should have insisted upon it. Buelow, in his deposition—not cross-examined—testified that he said to Goeppert, after the signing of the contract: "I told Mr. Goeppert that he had been of some service to me and I would be glad to pay him something for his services." From this testimony of Buelow but one reasonable conclusion can be drawn and that is that there had been no understanding on the part of the agent that any larger commission was to be paid than the two cents per hundred pounds and that for that reason Buelow was willing to grant to the broker a portion of the commission which he had failed to receive from the company. This leaves only the testimony of Goeppert for our consideration, which is to the effect that he, Goeppert, stated that he could not accept anything but the regular commission and signed the contract under pressure, as above indicated. We do not regard that mere statement as sufficient to constitute a positive demand for the payment of the commission, and as it would seem to be the fact that Hannam would not have entered into the contract unless Goeppert had accepted his gratuitous offer, we feel that the signing of the contract by Goeppert was an acceptance of the terms laid down by Hannam. Therefore, we consider the evidence insufficient to sustain the verdict and judgment of the trial court.

The judgment is reversed.

A petition for a rehearing of this cause was denied by the district court of appeal on December 23, 1922, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 22, 1923.

All the Justices concurred.